IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cv-00154

PRESERVATION SCIENCES, INC.,

    Plaintiff,

v.

CANNAHOLDCO, INC.,

    Defendant.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff Preservation Sciences, Inc. ("PSI"), for its Complaint against Defendant, CannaHoldCo, Inc. ("CHC"), states and alleges as follows:

### INTRODUCTION

1. This is an action seeking to prevent CHC from, among other things, unlawfully claiming to own PSI's proprietary technology and unlawfully disclosing PSI's trade secrets.

2. PSI developed a new, organic protein coating that can be applied to any organic material (*i.e.* fruits, vegetables, meats (fish, beef, poultry, pork, etc.), and agricultural crops) to facilitate rapid dehydration ("PSI Product").

3. This new technology is of particular interest to businesses in the cannabis and hemp industries (collectively, "cannabis industry") which need ways to safely and quickly dry cannabis and hemp products.

4. To capitalize on the lucrative cannabis market, in August 2018, PSI created a new company, Green Shield, LLC ("Green Shield"), and granted Green Shield the exclusive rights to

market and distribute the PSI Product in the cannabis industry for eighteen months. (*See* Exclusive Distribution Agreement ("Distribution Agreement"), attached as Ex. 1[1], at 44-46.)

5. The Distribution Agreement provides that while Green Shield may market and sell the PSI Product in the cannabis industry, PSI will retain all intellectual property rights related to the PSI Product. (*Id.* at 45-46 ¶¶ 9, 11.)

6. Nevertheless, contrary to the Distribution Agreement's terms and intent, CHC, which through a series of mergers has seized control over a minority interest in Green Shield, has recently started acting as if it owns PSI's proprietary technology and marketing the PSI Product as its own.

7. Upon information and belief, rather than marketing the PSI Product through Green Shield, CHC has renamed the PSI Product "Dryco" and is seeking investors. (*See* Dryco Pitch Deck, attached as Ex. 2)

8. At the end of 2019, CHC entered into a letter of intent with AgriCann Solutions Corp. ("AgriCann") whereby CHC would give AgriCann "an exclusive, royalty-free license to use, advertise, market, sell, and distribute, on a worldwide basis" the PSI Product. (Dec. 30, 2019 Press Release, attached as Ex. 3.) CHC also promised to "provide [AgriCann] with (and permit [AgriCann] to use) all technical data, know-how, and trade secrets relating to" the PSI Product. (*Id.*) The press release does not reference either PSI or Green Shield. (*Id.*)

9. CHC negotiated the entire deal with AgriCann without informing PSI. At no time did CHC disclose the potential deal to PSI or seek PSI's consent for the proposed deal to make

---

[1] Exhibit 1 is the Company Agreement of Green Shield, LLC ("Operating Agreement"). The Distribution Agreement is Exhibit C to the Operating Agreement.

AgriCann the worldwide distributor of the PSI Product. PSI only learned about the deal when it saw the press release.

10. Upon information and belief, CHC is continuing to market and sell the PSI Product as its own.

11. CHC's attempts to sell the PSI Product as its own will cause PSI irreparable injury. CHC's actions obstruct PSI's ability to market and profit from its own product. In addition, to the extent that CHC shares PSI's trade secrets with others, CHC will greatly diminish—if not destroy—the value of PSI's revolutionary technology. The PSI Product is valuable precisely because the underlying technology is a secret and PSI controls distribution. CHC's actions also have and will continue to damage PSI's reputation and goodwill.

12. Accordingly, PSI requests an order from the Court enjoining CHC from taking any action inconsistent with PSI's exclusive ownership of the PSI Product and the Distribution Agreement.

## PARTIES, JURISDICTION, AND VENUE

13. Plaintiff Preservation Sciences, Inc. is a corporation organized under the laws of Texas with its principal place of business located at 1087 Great Meadow Drive, Allen, Texas 75013.

14. Defendant CannaHoldCo, Inc. is a corporation organized under the laws of Wyoming with its principal office at 201 E. 5th Street, Sheridan, Wyoming 82801.

15. This Court has original jurisdiction over this matter under 28 U.S.C. § 1331, as this action alleges claims arising under the laws of the United States. The Court has supplemental jurisdiction over the state law claims alleged herein pursuant to 28 U.S.C. § 1367.

16. Venue is proper in this Court pursuant to Section 18.07 of the Operating Agreement. (*See* Ex. 1 § 18.07).

## GENERAL ALLEGATIONS

**A.     CHC Acquires An Interest In Green Shield**

17. PSI developed its revolutionary Product over several years. PSI treats the technology underlying the PSI Product as a trade secret and takes reasonable steps to keep the information a secret, including but not limited to restricting access to the information to those who need it and entering into confidentiality agreements with them.

18. In 2018, PSI was ready to begin selling the PSI Product.

19. During the summer of 2018, Ben Dills and Matt Ford approached PSI about obtaining the exclusive rights to distribute the PSI Product in the cannabis industries.

20. Ultimately, PSI, Dills, and Ford reached an agreement whereby they would form a new company, Green Shield, LLC, to distribute the PSI Product to the cannabis industries. Green Shield would have two members: PSI and Green Shield Marketing, LLC ("GSM"). GSM is an entity created by Dills and Ford for the purpose of operating Green Shield.

21. PSI and GSM executed the Operating Agreement on September 6, 2018. (Ex. 1 at 41.)

22. Although the Operating Agreement was not executed until September 6, 2018, it was effective as of August 1, 2018.

23. Shortly thereafter, Dills and Ford met Rodney Thompson, who expressed interest in investing in GSM. Dills and Ford needed to raise money to build Green Shield, and Mr.

Thompson, who is an investment advisor, convinced them to transfer their ownership in GSM to a new company, DRY Co., Inc. ("DRY Co.").

24. Upon information and belief, Dills, Ford, and Thompson structured a deal whereby Dills and Ford owned roughly 50% of DRY Co. shares, and Mr. Thompson and/or Mr. Thompson's company or associates owned the remaining shares.

25. Upon information and belief, Mr. Thompson and/or one of his business partners subsequently formed CHC and merged DRY Co., into CHC.

26. Mr. Thompson is the Chief Executive Officer of CHC. CHC's other executives are Jennifer Myung and Barry Gainsburg.

27. Upon information and belief, Mr. Thompson created CHC to diminish Dill's and Ford's influence and ultimately to remove them from the business.

28. CHC has since ousted Dills and Ford from Green Shield.

**B.    The Green Shield Distribution Agreement**

29. The Distribution Agreement is Exhibit C to the Operating Agreement.

30. Pursuant to the Distribution Agreement, PSI granted Green Shield "exclusive distribution rights of the Products worldwide in the Industry." (Ex. 1 at 44 ¶ 1.) "Products" and "Industry" are defined terms. (*Id.* at 44 ¶ 2.)

31. The Distribution Agreement expressly reserved for PSI all intellectual property rights. (*Id.* at 45-46 ¶ 9.) It also forbade "Green Shield and its Member, GSM . . . from reverse engineering, modifying, creating derivative works or in any manner attempting to replicate the PSI intellectual property . . . ." (*Id.*)

### C. CHC's Attempts To Steal And Market The PSI Product As Its Own

32. Despite the Distribution Agreement's terms and limitations, CHC attempted to steal PSI's intellectual property and market it as its own product, separate and apart from Green Shield.

33. According to the December 30, 2019 Press Release, CHC attempted to sell AgriCann an exclusive worldwide distribution license for the PSI Product. (Ex. 3.)

34. As part of the deal, CHC offered to give AgriCann all of PSI's intellectual property, including its trade secrets. (*Id.*)

35. Upon information and belief, CHC did not inform AgriCann that it was selling AgriCann the PSI Product or that CHC did not own the rights it was purporting to sell.

36. PSI had no knowledge of the deal between CHC and AgriCann until it discovered the press release.

37. Upon information and belief, CHC continues to market the PSI Product as its own under the brand "Dryco."

38. CHC prepared a "pitch deck" aimed at potential investors, which is publicly available on the internet at https://www.crowdspring.com/presentation-design/revolutionizing-cannabis-drying-2914190/ and https://www.crowdspring.com/presentation-design/revolutionizing-cannabis-drying-2914190/entry/10294662/?revision=10242345 (accessed January 17, 2019).

39. CHC created the pitch deck to obtain investments in DRY Co. and the "Dryco" product. (Ex. 2.)

6

40. The pitch deck names CHC's three executives (Thompson, Myung, and Gainsburg) as DRY Co.'s executive management. (*Id.* at Slide 3.)

41. In the pitch deck, CHC describes the Dryco product using language almost identical to language found on the Green Shield website. (Compare *id.* at Slide 4, with www.greenshieldsupply.com.)

42. In the pitch deck on slide 4, CHC says:

> DryCo is an organic processing aid, composed of FDA GRAS ingredients, which reduces the time required to complete the drying process of cannabis to approximately 24 hours and results in virtually 0% product loss, higher cannabinoid & terpene profiles and increases shelf life to 2+ years without significant oil loss.

(Ex. 2 at Slide 4.)

43. The Green Shield website says:

> Green Shield is an organic processing aid, composed of FDA GRAS ingredients, that reduces the drying & curing process of cannabis down to approximately 24 hours, and results in virtually 0% product loss, higher cannabinoid & terpene profiles, an increased shelf life of 2+ years, & much more!

(www.greenshieldsupply.com)

44. CHC also falsely claims that Dryco has a patent pending. (Ex. 2 at Slide 4.)

45. CHC added this same false statement to the Green Shield website. (*See* Screenshot, attached as Ex. 4, at 2.)

46. PSI has never applied for a patent for the PSI Product. Instead, it has made the strategic decision to treat the technology underlying the PSI Product as a trade secret.

47. After learning about the press release and CHC's other misstatements, PSI requested that CHC take down the false information. To date, CHC has refused to do so.

**D.     PSI's Damages**

48.     As a result of CHC's attempts to market Dryco (or another product) as a competitor to Green Shield, CHC has damaged PSI's market position, credibility, and goodwill. First, PSI obtains revenue from Green Shield's sales. It does not obtain revenue from CHC's other operations. Second, PSI informs companies interested in doing business with it that it has a unique product. CHC's attempts to market the PSI Product as Dryco undercut PSI's claim to have a unique product and thereby damage PSI's credibility and goodwill. CHC's actions also hamper PSI's ability to attract new investment.

49.     CHC has damaged PSI's reputation and associated goodwill.

50.     CHC's threatened distribution of PSI's confidential information makes that information less valuable.

51.     CHC's false statements regarding a pending patent also have damaged, and will continue to damage, PSI's reputation in the marketplace and its ability to attract clients and investors.

**FIRST CLAIM FOR RELIEF**
**Injunctive Relief**

52.     PSI hereby incorporates by reference all allegations set forth above as if fully set forth herein.

53.     PSI is entitled to preliminary and permanent injunctive relief to prevent CHC from (1) asserting ownership rights over the PSI Product and marketing the PSI Product as its own, and (2) disclosing PSI's trade secrets. CHC has demonstrated a willingness and capability to ignore contractual language and to use false statements to mislead potential customers to drum up business for itself. Absent the Court's intervention, CHC will continue its wrongful conduct.

54. As demonstrated in the accompanying motion, PSI has a high probability of success on the merits.

55. PSI has suffered and will continue to suffer real, immediate, and irreparable harm if a preliminary injunction is not issued.

56. PSI's remedies at law alone are not adequate.

57. The relief PSI is requesting is not adverse to the public interest.

58. A preliminary injunction will preserve the status quo pending a trial on the merits.

59. When balancing the hardships that a preliminary injunction would impose on CHC versus the hardships that PSI will face if no injunction is issued, the balance tilts strongly in PSI's favor.

60. PSI is entitled to a preliminary and a permanent injunction.

## SECOND CLAIM FOR RELIEF
### Declaratory Judgment

61. PSI hereby incorporates by reference all allegations set forth above as if fully set forth herein.

62. PSI owns all intellectual property rights related to the PSI Product.

63. The PSI Product is a trade secret.

64. CHC owns no intellectual property rights related to the PSI Product. CHC may only participate in the sale and distribution of the PSI Product through Green Shield, and in accordance with the terms of the Distribution Agreement.

65. PSI therefore asks this Court to declare that (1) PSI owns all intellectual property rights associated with the PSI Product; (2) CHC does not have any ownership rights to any intellectual property rights related to the PSI Product or Green Shield; (3) CHC cannot apply for

a patent over the PSI Product; and (4) CHC cannot market, sell, or distribute the PSI Product except as permitted by the Distribution Agreement.

### THIRD CLAIM FOR RELIEF
### Misappropriation of Trade Secrets - 18 U.S.C. § 1836(b)

66. PSI hereby incorporates by reference all allegations set forth above as if fully set forth herein.

67. The PSI Product is PSI's trade secret.

68. As described above, CHC has misappropriated and is threatening to further misappropriate PSI's trade secrets.

69. CHC's misappropriation of PSI's trade secrets is willful and malicious.

70. CHC's actual and threatened misappropriation of trade secrets has caused and will continue to cause PSI real, immediate, and irreparable injury.

71. PSI has no adequate remedy at law to prevent CHC's future misappropriation, disclosure, or use of PSI's trade secrets, and therefore is entitled to preliminary and permanent injunctive relief pursuant to 18 U.S.C. § 1836(b)(3)(A).

72. CHC's misconduct has also caused and will cause PSI damages in an amount to be proven at trial.

### FOURTH CLAIM FOR RELIEF
### False Marking - 35 U.S.C. § 292

73. PSI hereby incorporates by reference all allegations set forth above as if fully set forth herein.

74. In its advertising, CHC has falsely claimed that the product it offers for sale has a patent pending.

75. CHC made this false claim with the intent of deceiving the public.

76. CHC's false marking has and will continue to cause PSI real, immediate, and irreparable injury.

77. PSI has no adequate remedy at law to prevent CHC's false marking, and therefore is entitled to preliminary and permanent injunctive relief.

78. CHC's misconduct has also caused and will cause PSI damages in an amount to be proven at trial.

## JURY DEMAND

PSI demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, PSI respectfully requests that the Court enter judgment in its favor and against Defendant CHC and grant relief as follows:

A. A preliminary injunction, and permanent injunction enjoining CHC from (1) falsely claiming to be the owner of intellectual property rights related to the PSI Product; (2) marketing the PSI Product in any manner other than as is expressly allowed under the Distribution Agreement; (3) using and/or sharing PSI's trade secrets; (4) advertising that PSI's Product has a pending patent and taking any steps to obtain a patent on PSI's Product; and (5) requiring CHC to issue a retraction of the December 30, 2019 press release and pitch deck.

B. Damages against CHC in an amount to be proven at trial for damages caused by CHC's misappropriation of trade secrets and false marking;

C. A declaration of the rights, status, and other legal relations and obligations of the parties as described in the Second Claim for Relief above;

D.     An award of costs and fees, including attorneys' fees, as permitted by law;

E.     Pre-judgment and post-judgment interest to the extent permitted by law; and

F.     Such further relief as the Court deems proper.

Dated: January 17, 2020

Respectfully submitted,

*s/ Michiko A. Brown*
Michiko A. Brown, #33072
Emily L. Wasserman, #46155
DAVIS GRAHAM & STUBBS LLP
1550 17th Street, Suite 500
Denver, Colorado 80202
Telephone: 303.892.9400
Facsimile: 303.893.1379
Email: miko.brown@dgslaw.com
       emily.wasserman@dgslaw.com

*Attorneys for Plaintiff Preservation Sciences, Inc.*

Plaintiff's Address:
1087 Great Meadow Drive
Allen, Texas 75013